**SCHLEIER LAW OFFICES, P.C.**
3101 N. Central Avenue
Suite1090
Phoenix, Arizona 85012
Telephone: (602) 277-0157
Facsimile: (602) 230-9250

TOD F. SCHLEIER, ESQ. #004612
Tod@SchleierLaw.com
BRADLEY H. SCHLEIER, ESQ. #011696
Brad@SchleierLaw.com

*Attorneys for Plaintiff Rachel Rich Morales*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Rachel Rich Morales, a married woman, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| City of Surprise, a municipal corporation and a governmental entity, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff by and through counsel, for her Complaint makes the following allegations against Defendants City of Surprise ("City").

**JURISDICTION AND VENUE**

1. This action is brought to remedy discrimination and retaliation on the basis of sex in the terms, conditions and privileges of employment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000 *et. seq*. ("Title VII").

2. Injunctive and declaratory relief, damages and other appropriate legal and equitable relief are sought pursuant to 42 U.S.C. §2000e (f) and (g).

3. Plaintiff Rachel Rich Morales ("Plaintiff" and/or Plaintiff Morales") filed a charge of sex discrimination and retaliation against Defendant City with the Equal Employment Opportunity Commission ("EEOC") on or about June 14, 2021.

4. On or about June 24, 2021 the EEOC issued a Notice of Right to Sue to Plaintiff.

5. Plaintiff has complied fully with all prerequisites to jurisdiction in this Court under Title VII. This Court has jurisdiction under §706(f)(3) of Title VII, 42 U.S.C. § 20003-5(f)(3).

6. Jurisdiction of this Court is also invoked pursuant to 28 U.S.C. §§ 1331 as this matter involves a federal question under Plaintiff's claims of sexual harassment, hostile work environment and retaliation for opposing sexual harassment against the City were in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et. seq.* ("Title VII").

7. The unlawful employment practices complained of herein occurred within Maricopa County, State of Arizona. Accordingly, venue in this Court is proper pursuant to 28 U.S.C. § 1391(b).

**PARTIES**

8. Plaintiff Rachel Rich Morales (formally Rich) ("Plaintiff" or "Plaintiff Morales") is a married women and resident of Maricopa County, Arizona and at all times relevant herein was employed with the City of Surprise as a paramedic with the City of Surprise Fire Department.

9. Defendant City of Surprise is a municipal corporation and a governmental entity of the State of Arizona. The City owns and operations the City of Surprise Fire Department and is an employer with respect to Title VII.

## FACTUAL ALLEGATIONS

10. Plaintiff Morales is a female paramedic and since March 2018 has been and continues to be employed with the City of Surprise Fire Department.

11. Plaintiff Morales was assigned to Fire Station 303 and scheduled on the C1, A2-shift. Captain Weston Lee Park oversaw Fire Station 303 and the A-shift crew and was one of Plaintiff's supervisors.

12. At the time of her employment, Plaintiff Morales was a young woman at the age of 25 and Captain Park, her supervisor was 16 ½ years her senior.

13. Soon after Plaintiff began her employment at Station 303, Captain Park targeted Plaintiff and from about 2018-2019 subjected Plaintiff to unwanted and unwelcome sexual harassment when no one else was around and improperly pursued a personal romantic relationship with Plaintiff sending her inappropriate text messages.

14. On about April 4, 2019, Robert Wieser invited crew members to play disc-golf at the park and Plaintiff Morales went along because she knew she would not be alone with Captain Park.

15. After the game Mr. Wieser, Plaintiff Morales and Captain Park lunched together. Mr. Wieser left after lunch and soon after Plaintiff Morales also started leaving. Captain Park asked Plaintiff Morales to stay and play the "what if game" and he made several sexual innuendos prefacing them with "what ifs", which Plaintiff Morales rejected.

16. On that same day on April 4, 2019, as Plaintiff Morales approached her car to leave, Captain Park hugged Plaintiff and tried to kiss her mouth and Plaintiff moved her head and Captain Park kissed Plaintiff's neck. Plaintiff Morales rejected his sexual advances and left.

17. On April 5, 2019, Captain Park sent Plaintiff a snapchat text messages admitting he crossed the line, apologized for his behavior, that he would keep it professional, and asked Plaintiff Morales not to disclose his behavior to anyone at work.

18. On that same day, April 5, 2019, Plaintiff Morales confided in her work partner, Sean Mason, that Captain Park hugged and kissed her and showed Mr. Mason the text messages from Captain Park.

19. Plaintiff Morales feared the snapchat text messages would disappear, and Mr. Mason let Plaintiff Morales use his cell phone and Plaintiff took pictures of Captain Park's texts and sent the pictures to her own phone and deleted the pictures from Mr. Mason's cell phone.

20. Plaintiff Morales asked Mr. Mason not to leave her alone around Captain Park and not to say anything to anyone because Plaintiff Morales wanted to handle the situation at the lowest level and follow the proper chain of command.

21. Throughout April – June 2019, Captain Park continued to send Plaintiff Morales flirtatious texts

22. On June 15, 2019, Mrs. Veronica Park, Captain Park's wife, called Plaintiff Morales with accusations that according to Captain Park, Plaintiff Morales was pursuing him. After the phone conversation Mrs. Park sent a follow up text message to Plaintiff writing, "Thank you again for your honesty and willingness to keep this professional with my Husband. Have a nice day!"

23. On June 16, 2019, Plaintiff Morales reported that Captain Parks created a hostile work environment and subjected Plaintiff Morales to sexual harassment.

24. Defendant City investigated Plaintiff's complaint and concluded that Plaintiff was subjected to sexual harassment and a hostile work environment.

25. Sometime between August 1-5, 2019, Captain Park was disciplined, reprimanded with probation, placed on administrative leave, assessed 40 hours suspension without pay, and his bid for Captain at Station 303 A-shift was revoked and reassigned to LA305 on the B-shift, and was prohibited from working any overtime during Plaintiff's designated shifts to prevent Plaintiff from encountering Captain Park. Many of these restrictions were to last at least 36 months to ensure that Plaintiff would no longer be in contact with the Captain Park.

26. Later in August 2019, Battalion Chief Julie Moore (Chief Moore) met with Plaintiff Morales at Fire Station 303 and discussed Defendant City's investigation findings and during this meeting also commented to Plaintiff that Plaintiff Morales had also done some things that were wrong when Plaintiff Morales made alleged inappropriate comments directly to Captain Collins and reprimanded and threatened disciplinary action against Plaintiff stating that Plaintiff could also be disciplined if she were to repeat that misconduct.

27. Plaintiff immediately felt Chief Moore was subjecting her to retaliation or threatening retaliation against Plaintiff with a seemingly veiled threat by also telling Plaintiff that Chief Moore and Captain Park had attended the fire academy together.

28. Later, Plaintiff learned that Chief Moore was reprimanding Plaintiff based on a letter Chief Moore read which was written by Captain Park in his defense against Plaintiff's claims and submitted to Defendant City's investigator Tami Turkovich.

29. In his statement Captain Park alleges Plaintiff made inappropriate comments and that Captain Park corrected Plaintiff's misconduct even though Ms. Turkovich never vetted Plaintiff to obtain her response to Captain Park's allegations.

30. Captain Collins clarified that the inappropriate comment was a movie quote which Plaintiff made directly to him, Caption Collins, in a joking manner and that Captain

Collins, not Captain Park, corrected Plaintiff with a verbal notice not to use inappropriate language at work, and Captain Collins handled and settled that occurrence and never again had any issues with Plaintiff using inappropriate language at work.

31. After Captain Collins' clarification of handling the matter, Captain Park later admitted that he did not formally counsel or correct Plaintiff Morales, rather gave her looks to let her know she was out of line, and Captain Parks also acknowledged he never told Captain Collins that he had heard Plaintiff Morales using improper language and corrected her.

32. Plaintiff felt Chief Moore was reprimanding Plaintiff based on Captain Park's misrepresentations, over an un-related previous matter. Per the notice of investigatory interview set forth by the Defendant's City it states, "Failure to answer questions completely and truthfully or cooperate fully as directed during this investigation, *will result in termination*. Defendant City has allowed Captain Park to continue to work as a supervisor without additional disciplinary action or remedial training even though he had been found abusing his supervisory power, making a false sworn statement and not following the City's proper disciplinary actions set forth by the EPM.

33. At the end of their August 2019 meeting and based on Chief Moore's information, Plaintiff Morales understood and believed that Captain Park would not be allowed to work overtime on Plaintiff's designated shift to make sure Plaintiff **never** encountered Captain Park.

34. Plaintiff felt safe at work believing she would no longer be subjected to Captain Park's sexual harassment and now had a safe working environment.

35. After the August 2019 meeting, Plaintiff spoke with Captain Collins and reiterated her understanding and belief that Captain Park would not be allowed to work overtime on Plaintiff's designated shifts.

36. On March 30, 2020, while on duty, Plaintiff experienced symptoms of irregular and slow heart rate and dizziness and was transported to medical care and was under the care of a cardiologist and discussed medical options.

37. While Plaintiff sought a second medical opinion, Chief Moore notified Plaintiff that there was no light duty available to Plaintiff. Plaintiff contacted HR and was told that light duty work was under the sole discretion of that supervisor causing Plaintiff to believe Chief Moore was continuing to retaliate against Plaintiff.

38. Plaintiff was aware of other employees in similar medical situations having been offered light duty options to return to work.

39. Plaintiff also spoke with Captain Mike Payne from the Surprise Fire Department who was also the Vice President of Plaintiff's Union and Plaintiff's Representative. He stated that there was no precedence of another member being told there was no light duty work available to them, and that HR was correct in that light duty availability was the sole discretion of the supervisor.

40. Plaintiff was forced to use her own PTO until she was medically cleared to come back to work. Plaintiff felt very stressed, felt her job was in jeopardy and was scared she would be terminated when her PTO ran out.

41. Plaintiff believed she was retaliated against when she was denied worker's compensation for heart issues when other employees had been approved.

42. Plaintiff continued to be subjected to retaliation following her initial complaint against Captain Park, as she was no longer treated the same as prior to the incident and was/is made to feel like a "pariah" by certain crews and administrative staff creating and undesirable working environment.

43. On about October 20, 2020, Plaintiff was working her C-Shift on Ambulance 303 and became very upset when she discovered that Captain Park was also working the same shift in Ambulance 302.

44. Prior to October 20, 2020, Plaintiff was never aware that Captain Park worked on the same shift as she did.

45. On October 20, 2020, Plaintiff experienced a "full-blown panic attack", fearing that when both units transported patients to Del Web Hospital at the same time that Captain Park would have face-to-face contact when Plaintiff and she did not feel protected and did not feel safe at work.

46. Plaintiff told the crew members she was not doing well and had someone else care for their patient. Plaintiff sat upfront in the ambulance and texted her supervisor Captain Scott Collins about her fear about facing Captain Park and feeling psychically ill.

47. Captain Collins drove back to where Plaintiff was at and then drove Plaintiff back to Station 303 and Plaintiff became physically ill, vomiting, hyperventilating, and crying.

48. Captain Collins, Jesus Rivera, Battalion Chief Autry Cheatham, Chief Julia Moore, and Captain Sean Cahill all met with Plaintiff Morales at the Fire Station's kitchen asking why she was so upset. Plaintiff stated she should not have to work with someone who had previously sexually assaulted her. Plaintiff felt belittled and victimized by Chief Cheatham's response, stating: "This department will not be held hostage to your demands."

49. During the October 20, 2020 meeting, Plaintiff Morales reported that Captain Park had also sexually assaulted her prior to the sexual harassment investigation and had not reported the sexual assaults before because she believed she did not have supporting proof and feared she would not be believed because he was the Captain and because Captain Park assaulted her when no one else was around.

50. Plaintiff also knew Captain Park had anger issues and she was also trying not to piss him off and she was just trying to appease him, calm him, keep him rational, not trying to trigger him any point.

51. On October 21, 2020, Ms. Kerry Sheward, Human Resources met with Plaintiff and Plaintiff expressed she was being subjected to a hostile work environment creating unsafe working conditions for Plaintiff because Captain Park had been allowed to work the same shifts Plaintiff was working, which he had been prohibited from doing

52. Defendant City failed to follow through its disciplinary action against Captain Park prohibiting Captain Park from having any work interaction with Plaintiff and by allowing Caption Park to work overtime on Plaintiff's shift creating a hostile work environment for Plaintiff.

53. Plaintiff Morales was told that in order to resolve this that she had to file criminal charges against Captain Park. Plaintiff Morales did not want to file criminal charges and only wanted a safe work environment again when the City had prohibited Captain Park from working on the same shifts Plaintiff was working on.

54. Ms. Sheward reported the sexual assault claims to the police and the Police Department opened an investigation. However, the Defendant's City failed to report the Plaintiff's initial claims of sexual assault in the first investigation. The investigating detective told Plaintiff that she could not pursue the investigation further unless she pressed criminal charges.

55. Plaintiff Morales cooperated with the police investigation and was scared for her job, scared of retaliation, and scared of what Captain Park might do.

56. Defendant City placed Captain Park on administrative leave on a 40 hour schedule until the investigation was complete.

57. Defendant City initiated its own investigation into the issue of the sexual assault even though Plaintiff Morales did not request such an investigation.

58. To date, Defendant City has not resolved the hostile work environment or notified Plaintiff of any resolution or future protections.

59. Plaintiff learned that Captain Park will be freely permitted to work overtime on Plaintiff's shift and Plaintiff may be required to work overtime on Captain Park's shift, in violation of Defendant City's practices with regard to employees who have been disciplined and not being permitted to work overtime.

60. Plaintiff refused mandatory overtime on Captain Park's shift and Plaintiff was then required to sign a new job description that added "works mandatory overtime as required," under the essential duties and responsibilities.

61. Fire Chief Tom Abbott told Plaintiff that he had moved Caption Park from working on her shift and her station because he believed Caption Park "did something wrong," yet told Plaintiff, "but if the department has a need he expects her to be a professional and work with him [Captain Park]".

62. Defendant City's failure to follow its own practices allowing Captain Park to work on Plaintiff's shift is a failure to provide a safe, harassment free working environment.

63. Plaintiff is subjected to a continued hostile work environment as it appears Defendant City will now allow Captain Park to work on the same shifts as Plaintiff was working on, even though Defendant City had previously concluded that Captain Park had created a hostile work environment and prohibited Captain Park from doing so.

64. In fact, Plaintiff Morales has been told that Defendant City will take no special action to ensure that she will no longer have to work on the same shifts (regular or overtime) with Captain Park.

65. Defendant City failed and/or refused to provide Plaintiff the same protections from being subjected to a hostile work environment that the City had previously afforded two male employees David Hackett and Tom Flores who had personality conflicts at work and the City took action to separate the two employees to ensure they had no work interaction to provide a safe working environment. Defendant City also had the two employees sign an agreement prohibited them from working and being at the same work station at the same time.

66. On or about April 1, 2021, Plaintiff also learned that numerous, inappropriate, derogatory, retaliatory comments about Plaintiff were made in front other members of the Surprise Fire Department including Chief Brenden Espie stating, "Fuck that bitch. She doesn't know what she's doing."

67. Captain Payne, a managerial employee with the City of Surprise and Plaintiff's Union Representative, was caught disparaging Plaintiff to a Glendale Union member stating, "Matt [Morales] is a great employee, you guys will really like him; but I wouldn't hire his wife, she is a problem" in referring to Plaintiff.

## COUNT ONE

## VIOLATION OF TITLE VII

**(Hostile Work Environment Sexual Harassment – Against Defendant City)**

68. Plaintiff incorporates by reference all above allegations as if fully set forth herein.

69. Defendant City discriminated against Plaintiff in the terms and conditions of her employment on the basis of her sex in violation of Title VII as a result of the sexually hostile work environment.

70. Plaintiff Morales was subjected to unwelcome sexual harassment.

71. Plaintiff reported her supervisor's ongoing sexual harassment and hostile work environment to the City.

72. Defendant City investigate and concluded that Captain Park had created a hostile work environment and failed to take corrective action to resolve the hostile work environment, failed to follow its own practices and allowed Captain Park to continue to work on Plaintiff's shift failing to provide a safe, harassment free working environment forcing Plaintiff to be subjected to a continued hostile work environment as early as October 20, 2020.

73. Though the City initially took corrective action, if has failed to follow through with its promised corrective action against Captain Park. Said failure to follow through with corrective action constitutes a violation of Title VII.

74. As a direct and proximate result of the City's violation of Title VII described herein with regard to sexual harassment, Plaintiff has suffered and continues to suffer mental and emotional distress, pain and suffering, anger, depression, anxiety, humiliation and embarrassment.

### COUNT TWO
### VIOLATION OF TITLE VII
### (Retaliation – Against Defendant City)

75. Plaintiff incorporates by reference all above allegations as if fully set forth herein.

76. Plaintiff engaged in protected activity when she opposed practices that violated Title VII of the Civil Rights Act of 1964.

77. Plaintiff reported sexual harassment and discriminatory conduct as early as June 16, 2019 and since that time, Plaintiff has been subjected to various forms of retaliation starting as early as August 2019 and running through to the present, including things, such as:

- attempts to intimidate her;
- not being able to work light duty;
- forced to use her own PTO and denied workers' compensation compared to others who had not made allegations of sexual harassment;
- being falsely accused of improper behavior;
- being told she would have to work with Captain Park even though she had been told that she would not work on the same shift for at least three years;
- forced to sign a new job description that added, "works mandatory overtime as required," under essential duties and responsibilities that could result in Plaintiff being required to work with Captain Park or having disciplinary action taken if Plaintiff refuses to work on his shift;
- not afforded the same protections from a hostile work environment offered to employees David Hackett and Tom Flores;
- Captain Payne disparaging Plaintiff when stating that he would not hire Plaintiff and that she's a problem; and
- numerous, inappropriate, derogatory, retaliatory comments including comment made by Chief Brenden Espie about Plaintiff stating, "Fuck that bitch. She doesn't know what she's doing.

78. The City discriminated and retaliated against Plaintiff in the terms and conditions of her employment when she was disciplined and threatened as a result of her opposition to practices that she believed to be gender discrimination and sexual harassment in violation of Title VII.

79. As a direct and proximate result of the City's retaliation referenced herein, Plaintiff has suffered and continues to suffer damages in the form of emotional distress

including but not limited to depression, anxiety, sleeplessness, and such other damages which may be proven at trial.

WHEREFORE, Plaintiff requests that Judgment be entered against the City of Surprise as follows:

1. Declaring the acts and practices complained of herein are in violation of Title VII;

2. General and Special damages to be proven at time of trial;

3. Compensatory damages to be proven at the time of trial;

4. Prejudgment and post-judgment interest;

5. Attorneys' fees and costs of suit; and

6. For such other relief this Court deems just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demand a jury trial.

DATED this 21st day of September, 2021.

**SCHLEIER LAW OFFICES, P.C.**

/s/Bradley H. Schleier
Bradley H. Schleier
Brad@SchleierLaw.com
*Attorney for Plaintiff Rachel Rich Morales*